## ARKOOSH, et al., v. SORRENSON.

No. 2740.   Decided July 12, 1915.   Application for Rehearing, August 6, 1915 (150 Pac. 959).

1. MINES AND MINERALS—MINING CONTRACTS—CONSTRUCTION. Where a mining contract obligated defendant to work and have employed in the construction of a tunnel at least four men per day working twenty days per calendar month, it was not a compliance with the stipulation for defendant to have employed a less number of men working a greater number of hours than the usual mining day, though the total of the hours of work on the tunnel was equal to eighty regular mining days.   (Page 627.)

2. MINES AND MINERALS—CONTRACTS—RIGHT TO MINERALS. Defendant was engaged to drive a tunnel in a mine under a contract providing that he should have the right to dispose of all the ore excavated within the four lines of the tunnel, but should not be allowed to stope any veins, lodes or ledges without the agreement in writing of plaintiffs.   The contract further provided that defendant should have the right to drive other and smaller tunnels and to stope any and all veins, but that 60 per cent. of the proceeds of the ores should go to plaintiffs.   Plaintiffs claimed ore taken from the mine by defendant, and defendant's witnesses testified that the ore was taken from an old tunnel

Arkoosh et ,al. v. Sorrenson, 46 Utah 625.

or stope which had for a long time existed on the mining claim. *Held* that, under the contract, plaintiffs were entitled to the ore; defendant not claiming it under the share clause of the contract.   (Page 630.)

Appeal from District Court, Third District; *Hon. T. D. Lewis*, Judge.

Action by J. George Arkoosh and another against George N. Sorrenson.

Judgment for plaintiffs.   Defendant appeals.

AFFIRMED.

*P. T. Farnsworth, Jr.*, for appellant.

*Booth, Lee, Badger, Rich & Parke*, for respondents.

FRICK, J.

This action was commenced by the plaintiffs, in the District Court of Salt Lake County to recover a certain carload of ore which, it is alleged in the complaint, the defendant, Sorrenson, had wrongfully removed from certain mining claims, and which ore it was alleged belonged to the plaintiffs.   The defendant denied the plaintiff's right to or ownership of the ore sued for, and claimed to be the owner thereof by virtue of a certain contract entered into between him and the plaintiffs, which contract he set forth in full as a part of his answer.   The defendant also set up a counterclaim in which he claimed damages for the alleged breach of the contract aforesaid by terminating defendant's rights thereunder and by excluding him from the mining claims mentioned in said contract, and therefore preventing him from ultimately acquiring ownership of the forty per cent. interest in the mining claims mentioned in the contract.   At the hearing the court sustained plaitiffs' motion for a nonsuit against defendant's counterclaim, and after all the evidence was submitted by both sides it, upon plaintiffs' motion, also directed the jury to return a verdict in favor of plaintiffs to the effect that "said plaintiffs are entitled to the car of ore in dispute, and to the

proceeds thereof.'' Judgment was entered accordingly, from which judgment the defendant appeals.

The principal difference between the parties arises out of the terms of the contract pleaded by the defendant. Omitting the formal or introductory parts, and those portions not material, the contract reads as follows:

''Now, therefore, it is agreed by the respective parties hereto for and in consideration of the premises herein contained as follows: The said parties of the first part agree to transfer to the said part of the second part at the end of one year from the date hereof, and upon the completion of all of the work and labor to be performed by the said party of the second part upon the said property above mentioned as is more fully set out hereinafter a forty (40) per cent. share in and to said properties, and the said parties of the first part to allow the said party of the second part to perform the said work and labor hereinafter mentioned. The said party of the second part agrees, for and in consideration of the premises herein contained, to drive a tunnel horizontally through the Comet Fraction, New York and Boston claims, as above mentioned, a distance of one thousand (1,000) feet, said tunnel to be five and one-half (5½) feet by six (6) feet and timbered when necessary, finished and completed in a thorough and workmanlike manner. The entrance to said tunnel to be placed at the most advantageous point on the New York claim as above mentioned. *The said party of the second part agrees to work and to have employed in the construction of said tunnel at least four men per day, working twenty (20) days per calendar month.* The said party of the second part agrees to commence work upon said tunnel not later than November 10, 1912, said tunnel to be completed by not later than November 10, 1913.

''It is further agreed that the said party of the second part shall have the right to dispose of all of the ore encountered and excavated within the four lines of said tunnel, but party of the second part shall not be allowed to stope any veins, lodes, or ledges without the agreement in writing of the parties of the first part.

''It is further provided that the said party of the second

part shall have the right to drive other and smaller tunnels in any and all portions of the above claims as above mentioned and to stope any and all veins, lodes, and ledges encountered; forty (40) per cent. of the net proceeds thereof going to the said party of the second part and sixty (60) per cent. of the net proceeds thereof going to the said parties of the first part, with provisions in regard to the smelter tests and access to the workings as above stated. * * *

"And it is further agreed between the parties hereto that, if the said party of the second part shall fail to perform the work and labor within the time and in the manner hereinbefore specified, or shall fail to comply with the terms of this contract in any manner, then the same shall immediately cease and become null and void, and all the rights of the party of the second part hereunder shall terminate." (Italics ours.)

The plaintiffs at the trial contended: (1) That the defendant had failed to comply with the terms of the contract aforesaid, and therefore they had elected to and had terminated the same, and the defendant thereby had lost all rights under it; and (2) that the ore in question had been mined and taken from a portion of the mining claims from which the defendant had no right to take or remove ore. The plaintiffs at the trial proved that the defendant did not "have employed in the construction of said tunnel at least four men per day working twenty (20) days per calendar month." The defendant conceded at the trial, and conceded, through his counsel, at the hearing, that during some of the time he had less than four men working in said tunnel. Indeed, he admitted that during part of the time he had only one man working therein. He contends, however, that eight hours constitute a shift; that a shift constitutes a day; and that when the eight-hour shifts that were worked in the tunnel are all added together he did, in fact, work what he calls "twenty shifts" in each calendar month. In arriving at that result he, however, is compelled to have one man work more than a shift each day. In that connection he contends that some days one man worked more than eight hours, and thus worked more than one shift. He therefore insists that he is entitled to add all of the shifts together, and if by doing so he did work eighty shifts in each

calendar month, that then he has complied with the terms of the contract. We do not so construe the italicized portion of the contract. All the terms of the contract must be considered together. The language is that the defendant must employ in said tunnel "at least four men per day." True, the four men need only work twenty days in each calendar months, but that does not mean that the defendant need only employ two men, each of whom should work sixteen hours each day for twenty days in each month, or, if they worked thirty days, to work proportionately less hours. The contract provides that "at least four men per day working twenty (20) days" in each month, and not for eighty shifts of work in each month by less than four men. It requires no argument to show that four men working eight hours each day in a mine who are competent miners will accomplish more in the long run than two men working sixteen hours each day in the same mine, and especially in forcing a tunnel through solid rock. We are of the opinion, therefore, that the District Court did not err in construing the contract to the effect that under the defendant's own admissions at the trial he had not complied with its terms, in that he had failed to keep employed in the tunnel the number of men he was required to employ. That the parties to the contract themselves so construed the language of the contract when it was executed is to some extent borne out by the facts that it was made to appear at the hearing that in multiplying shifts as the defendant had done it was utterly impossible for him to complete the tunnel within the time limited. If, therefore, the defendant himself breached the terms of the contract in the particulars just stated, the plaintiffs had the right to terminate the same and to exclude him from the property, as he claims they did, before bringing this action. The defendant, therefore, had no cause of action for damages for breach of the contract, and the court committed no error in sustaining the motion for a non-suit.

Defendant's counsel, however, vigorously argues that the court erred in directing a verdict for the plaintiffs for the ore in question. As appears from the contract, the defendant was entitled to all the ore he "encountered and excavated

within the four lines of said tunnel''; that is, any ore which formed part of the cubical contents of the tunnel as it was to be constructed belonged to the defendant. He, however, was not allowed ''to stope any veins, lodes, or ledges without the agreement in writing of the parties of the first part,'' the plaintiffs. By another provision of the contract he was given ''the right to drive other and smaller tunnels in any and all portions of the above claims as above mentioned, and to stope any and all veins, lodges, and ledges encountered.'' As we understand defendant's counsel, he contends that the ore in question comes within the clause of the contract we have just quoted, and therefore belongs to the defendant. But here again the defendant is bound by the testimony of his own witnesses. Taking their testimony, there is no room for doubt that the ore in question was, in fact, taken from an old tunnel or stope which for a long time had existed on the mining claims. Without pausing, however, to analyze the evidence, let us consider the defendant's right to the ore in the light of the plain provisions of the contract and in view of the basis of his claim thereto that he made at the trial. Referring to the contract, it is, of course, elementary that all of its parts must be considered and construed together. We think the several parts of the contract relating to the right of the defendant to mine and remove ore are clear and unambiguous. In the first place, all the ore which was encountered as part of the cubical contents of the main tunnel belonged to the defendant. In addition to that, the defendant was permitted to run smaller tunnels upon the mining claims, and, if he did so, then he could stope all veins and lodes encountered in said tunnel, but, if he stoped any ore therein, he was required to yield up sixty per cent. of the proceeds thereof to the plaintiffs. True, with the written consent of the plaintiffs, he could also stope any veins or ledges other than those specially mentioned in the contract. The defendant does not claim that the ore in question was ''encountered'' in the main tunnel. Neither can he successfully claim that the ore in question came from any ''other smaller tunnels'' which he was authorized to drive on the mining claims, for the reason that if he did he was, by the

terms of the contract, compelled to yield up sixty per cent. of the net proceeds thereof to the plaintiffs, and he, at the trial, claimed, and at the hearing contended, that they are not entitled to any part of the ore in question, but that it all belongs to him. Inasmuch, therefore, as it must be conceded that the ore in question was not "encountered" in the main tunnel, and that it was not taken from any one of the "smaller tunnels," the defendant's claim to the ore must fail. He certainly cannot successfully contend that under the terms of the concontract he was entitled to the ore if it came from any "stope, veins, or ledges" other than those "encountered" in any of the smaller tunnels, because he was expressly forbidden from mining or removing any ores from any "stope, veins, ledges, or lodes," except from the main tunnel, or the smaller tunnels, without the written consent of the plaintiffs. He does not pretend he had any consent, nor does he rely upon any such claim. Merely having recourse to the plain provisions of the contract and to the claim of the defendant that the ore in question was not encountered in the main tunnel, and could not have been in any smaller ones run by him, because he claimed all of it, and not only forty per cent. of the net proceeds which would be his share, disposes of his claim to the ore.

We do not see how the trial court could escape from the foregoing conclusions, and hence it did not err in directing a verdict in favor of the plaintiffs for the ore in question. If the matter, however, be viewed in the light of the evidence, we cannot see what could have been submitted to the jury, and for that reason the result would still have been the same.

In view that plaintiffs were entitled to recover the ore in question, as a matter of law, for the reasons stated, the other errors complained of by the defendant, whichever way decided, could not affect or change the result, and hence we need not consider them.

The judgment is therefore affirmed, with costs to the plaintiffs.

STRAUP, C. J., and McCARTY, J., concur.

On Application for Rehearing.

FRICK, J.

A petition for a rehearing is filed in which counsel for appellant insists that we have seriously erred in our conclusions. He says:

"This court is wholly in error in the statement contained in its opinion that the car of ore in question 'was not taken from any one of the smaller tunnels.' Positive testimony of two witnesses produced by appellant upon the trial is that said ore was taken from another and smaller tunnel, the ore being encountered after driving a 4x5-foot tunnel a distance of from 4 to 6 feet."

If counsel were correct in his statement that two witnesses had unconditionally testified as indicated in the foregoing quotation, then, in view that the court directed a verdict against appellant, there would be merit to counsel's contention. The witnesses referred to, however, in describing the place where the ore was taken from, left no room for doubt that it was not taken from a "tunnel" driven by the appellant as provided in the contract, but that it was "stoped" from an old drift or tunnel, and was therefore taken from a place where the appellant had no right to take ore. The situation, therefore, is not, as is assumed by counsel, that there is some substantial evidence in favor of the party against whom a verdict was directed, but it is a case where the testimony of the party's own witnesses shows that he has taken the very thing he claims as his from his adversary's property, and therefore has no right thereto.

The next contention that the ore in question was "mined and extracted long prior to any alleged forfeiture of the contract" is entirely immaterial, in view that the ore was removed from a place where appellant never had any right to take ore.

The next, and only other, contention, in view of the foregoing, is also immaterial.

The petition should therefore be denied. Such is the order.

STRAUP, C. J., and McCARTY, J., concur.